## O. W. MAHANY v. KANSAS CITY RAILWAYS COMPANY and D. W. NEWCOMER'S SONS, Appellants.

### Division Two, March 7, 1921.

1. **NEGLIGENCE: Of Driver of Automobile: Imputed to Passenger.** Where plaintiff and other pall-bearers were being transported in an automobile operated by undertakers, who were carrying them on account of the consideration received by them in conducting the funeral, and plaintiff had no control over the driver of the automobile and was in no way directing his movements at the time and place of its collision with a street car, and the collision occurred in a very short time after the motorman and driver came within view of each other, the alleged negligence of the automobile driver cannot be imputed to plaintiff as a matter of law.

2. ————: **Clear Track: Approaching Automobile: Increasing Speed.** The principle that a street railway company, in the absence of evidence to the contrary, is entitled to a clear track and may run its cars at a rapid speed, unless prohibited by law, has no application where there is substantial evidence that the automobile, in which plaintiff was riding as a pall-bearer, from the time it left the cemetery until struck by the street car, was in plain view of the motorman, and its driver, without indicating any intention to stop, proceeded towards the crossing, at the rate of five miles per hour,

until the automobile occupied a position of peril, and the motorman, instead of putting his street car under control and slacking its speed, increased the speed to twenty-five or thirty miles per hour. Nor can a demurrer to the evidence offered by the railway company be sustained, under such circumstances, on the theory that the conduct of the motorman was justified by a signal from the chauffeur to proceed over the crossing, where the chauffeur testified that he gave no signal whatever and he is corroborated by the testimony of passengers in the automobile.

3 **NEGLIGENCE: Automobile Approaching Crossing: Demurrer.** Where there was a covered station about 140 feet from the center of a public highway crossing the railroad tracks, at which street cars usually stopped, and the motorman and conductor testified that the street car did not stop at this crossing, but increased its speed to twenty-five or thirty miles an hour, and the driver of an automobile, approaching the crossing at a speed of five miles an hour, testified that when he drove on the railway tracks his automobile was under perfect control and could have been stopped instantly, and that, before approaching the danger zone, he was in plain view of the street car and saw its every movement between the station and crossing, the said driver did not exercise either ordinary or the highest degree of care, and a demurrer to the evidence of plaintiff, a passenger in the hired automobile who was injured in the collision, offered by the owner of the automobile, was properly refused.

4. ———: **Street Railway: Instruction: Dangerous Speed.** An instruction for plaintiff, a passenger in a hired automobile who was injured when it collided with a street car at a public crossing, telling the jury that, in order to find against the street railway company, they must find that the company was guilty of negligence in operating the street car at a negligent, excessive and dangerous rate of speed, and was guilty of negligence in failing to have the car under reasonable control, and that plaintiff, by reason of said negligence, or the joint negligence of the company and the defendant owner of the automobile, was injured, properly stated the law.

5. ———: ———: **Signal from Chauffeur: Instruction.** The court did not err in modifying an instruction offered by the railway company telling the jury that "if the driver of the automobile in which plaintiff was riding signaled the motorman to come on with his car, plaintiff is not entitled to recover against said defendant" so as to read that "if the driver of the automobile in which plaintiff was riding signaled the motorman to come on with his car, and said motorman saw such signal, and relied thereon, and acting as

Mahany v. K. C. Railways Co.

a prudent person had a right to rely on such signal, then plaintiff is not entitled to recover from said defendant."

6. **NEW TRIAL: Newly Discovered Evidence.**  Defendants are not entitled to a new trial on the ground of newly discovered evidence relating to the extent of plaintiff's injuries, where such injuries were fully and extensively stated in his petition, and they used no diligence and made no effort, by inquiring from his neighbors and other persons who might know, to discover any of the facts which they set up in their motions as newly discovered evidence.  An assignment that plaintiff was guilty of fraud and deceit at the trial in testifying as to the extent of his injuries cannot be sustained on the ground of newly discovered evidence where defendants were guilty of inexcusable negligence in failing to ascertain the facts before trial.

7. **EVIDENCE: Extent of Injuries: Attending Physician: Conclusion Based on Plaintiff's Testimony.**  After plaintiff was injured he was in a Missouri hospital for two weeks, and while there was treated by three physicians, who found bruises and some other injuries, but no broken bones.  He went from there to Kansas, and thereafter no doctor examined or prescribed for him up to the time of the trial, two years later.  The three physicians who treated him at the time of the injury testified at the trial, but they had not examined him, or been requested to examine him, to determine his present condition, before they were called as witnesses.  After they had testified, plaintiff testified in his own behalf, detailing at length his injuries, among others that he had a heavy limp, which he exhibited to the jury, and which he said was due to an injury in the hip.  Then the three physicians were called to testify as experts and to base their opinions upon plaintiff's testimony.  *Held*, that the course pursued may not be illegal, but is unusual, and in the orderly administration of justice should be closely scrutinized by the court, and if an unfair advantage has been obtained thereby a new trial should be granted.

8. ———: ———: ———: **Conclusions of Expert.**  The testimony of an expert is admissible within reasonable bounds, but should not invade the province of the jury, nor substitute the expert's opinion for that of the jury upon the ultimate facts to be decided by them.  The expert should not be permitted to express his opinion as to conjectural and speculative matters.  It must not be based on mere possibility.

9. ———: ———: **Permanency of Injuries: Opinion of Expert: Reasonable Certainty.**  While an expert may express his opinion as to whether an injury to plaintiff will be permanent, his answer, in order to stand the test of judicial criticism, must show that the result which his opinion indicates will follow to a reasonable degree of certainty.

10. **EXCESSIVE VERDICT**: Injection of Harmful Facts. Where it was not alleged in the petition that an operation was performed upon plaintiff on account of his injuries, but throughout the trial the plaintiff, his counsel and one of his expert witnesses, over the repeated protests of defendant, improperly got before the jury that a serious operation had been performed, resulting in plaintiff's emasculation, without any showing that it was made necessary by the injuries that he received in the accident, and it is manifest that such operation and its natural effect were injected into the case for the illegal purpose of augmenting plaintiff's damage, and the size of the verdict makes manifest that they had that effect, the appellate court will not require a *remittitur* to be filed and affirm the verdict for the balance, but will reverse and remand the cause for a new trial, on the ground that defendants have not had a fair and impartial trial.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird,* Judge.

REVERSED AND REMANDED.

*Charles N. Sadler* for appellant, Kansas City Railways Co.

(1) The demurrer interposed at the close of plaintiff's evidence and renewed at the close of all the evidence should have been sustained. (a) No negligence was shown. No common law excessive speed was shown. Pope v. Railroad, 242 Mo. 239; Lann v. Ry. Co., 216 Mo. 580; Petty v. Ry. Co., 179 Mo. 674; Theobold v. Transit Co., 191 Mo. 432; Green v. Ry. Co., 192 Mo. 142. (b) Plaintiff could not rely on driver even if he was a guest. Leopard v. Ry. Co., 214 S. W. 268; Fechley v. Traction Co., 119 Mo. App. 367; Burton v. Pryor, 198 S. W. 1117; Marsh v. Railroad, 104 Mo. App. 587. (c) Even if car was running at excessive speed, the contributory negligence of plaintiff bars his right to recover. Pope v. Railroad, 242 Mo. 232; Green v. Railroad, 192 Mo. 131; Reeves v. Railroad, 215 Mo. 169; Schmidt v. Railroad, 191 Mo. 215; Sanguinette v. Railroad, 196 Mo. 497; Mockowik v. Railroad, 196 Mo. 550; McCreery v. Ry. Co., 221 Mo. 31. (2) The court erred

in giving instructions asked by plaintiff. (a) Instruction B fails to define what is meant by "negligent, excessive and dangerous rate of speed." Slezak v. Transit Co., 142 Mo. App. 702; Day v. Citizens Ry. Co., 81 Mo. App. 471; Gebhardt v. Transit Co., 97 Mo. App. 381. (b) There was no evidence upon which to base same. Jordan v. Transit Co., 202 Mo. 418; Rawling v. Frisco, 175 S. W. 935; Boyd v. Ry. Co., 236 Mo. 54. (c) Broadens issues made by pleadings. Bergfeld v. Dunham, 202 S. W. 253; Sims v. Dunham, 203 S. W. 652; Beave v. Transit Co., 212 Mo. 331. (3) The court erred in admitting incompetent, irrelevant and immaterial evidence offered by plaintiff. (a) Broadens issues made by pleadings. Shafer v. Dunham, 183 S. W. 670; Hall v. Coal Co., 260 Mo. 351; Bergfeld v. Dunham, 202 S. W. 253; Davidson v. Transit Co., 211 Mo. 363; Roscoe v. Railroad, 202 Mo. 576. (b) Invades province of jury. Taylor v. Ry. Co., 185 Mo. 256; Glasgow v. Ry. Co., 191 Mo. 364; Smart v. Kansas City, 208 Mo. 199; Castanie v. Ry. Co., 249 Mo.—(4) The court erred in refusing to sustain motion for new trial on the ground of fraud and deceit. R. S. 1909, sec. 2022; Ridge v. Johnson, 129 Mo. App. 541. (5) The verdict is excessive. Clark v. Ry. Co., 234 Mo. 396; Rodney v. Ry. Co., 127 Mo. 676; Lyons v. Railroad, 253 Mo. 143; Dominick v. Coal Co., 255 Mo. 305; Holzmer v. Ry. Co., 169 S. W. 102; Gibney v. Transit Co., 204 Mo. 704; Morrell v. Laurence, 203 Mo. 363.

*J. K. Cubbison* and *William G. Holt* for appellants, D. W. Newcomer's Sons.

(1) The trial court erred in failing to sustain the demurrer of D. W. Newcomer's Sons at the close of plaintiff's testimony and at the close of all of the testimony and in failing to give the peremptory instruction requested by them. (2) The court erred in giving Instruction A requested by plaintiff. (3) The trial court erred in failing to grant a new trial on the ground of

newly discovered evidence, and on the statutory ground, Section 2022, which provides in substance that in every case where a fraud or deceit has been practiced by one of the parties on the other, or the court is satisfied that perjury or mistake has been committed, a new trial should be granted. Standard Inv. Co. v. Hoyt, 164 Mo. 124; Ry. Co. v. Fogelsong, 42 Col. 341; In Jensen v. Hamburg American Packing Co., 23 App. Div. 163, 48 N. Y. Supp. 630; Southard v. Bangor Railroad, 91 Atl. 948; State v. Murray, 91 Mo. 103; Rickroad v. Martin, 43 Mo. App. 597; Lessenden v. Ry. Co., 238 Mo. 247; Waddell v. Ry. Co., 111 S. W. 542; McDonald v. Railroad, 164 Mo. App. 56; Morrell v. Lawrence, 203 Mo. 363; Taylor v. Ry. Co., 185 Mo. 239; Lundahl v. Kansas City, 209 S. W. 564; Ossenberg v. Chemical Co., 218 S. W. 421; Young v. Lusk, 268 Mo. 640.

*Atwood, Wickersham, Hill & Popham* for respondent.

(1) The allegation in plaintiff's petition against both defendants was clearly proven. Negligence of the driver of the automobile was not imputable to plaintiff: Sluder v. Transit Co., 189 Mo. 142; Becker v. Ry. Co., 102 Mo. 549; Marsh v. Railroad, 104 Mo. App. 586; Montague v. Ry. Co., 193 S. W. 936; Burton v. Pryor, 198 S. W. 1117; Newton v. Harvey, 202 S. W. 249; Munger v. City of Sedalia, 66 Mo. App. 632; Profit v. Ry. Co., 91 Mo. App. 375. (2) Plaintiff occupied the position of a passenger for hire. The automobile was furnished by defendants Newcomer's Sons as a part of the funeral service and they were paid for it. Mahaney had no control or right of control over the driver of the automobile. Contributory negligence was not pleaded, and therefore cannot be relied upon as a defense. Aronovitz v. Arky, 219 Mo. 622; Hensley v. K. C. Rys., 214 S. W. 288; Johnson v. Traction Co., 176 Mo. App. 174. (a) Instructions A and B given on request of plaintiff clearly informed the jury as to what under the

law would constitute liability against each of the joint tortfeasors. (3) The court did not err in denying motion for new trial on account of alleged so-called "fraud and deceit." This was a matter addressed solely to the discretion of the trial judge and this record will show that discretion was in nowise abused. Absent gross abuse of discretion, no question is presented on review by this court. Callison v. Eads, 211 S. W. 716; Oncken v. Ehrler, 222 S. W. 1047. (4) The point advanced by appellants that the court committed error in refusing to grant motion for new trial on ground of "newly discovered evidence" is wholly without merit. Not a single requirement of the law was met by appellants entitling them for new trial on this ground. State v. Speritus, 191. Mo. 41; Grocery Co. v. Hotel Co., 183 Mo. App. 440; Knox v. Railroad, 199 Mo. App. 72. (5) In view of the seriousness and permanency of plaintiff's injuries, the verdict of the jury was in nowise excessive. Hurst v. Railroad, 219 S. W. 567; Hays v. United Rys. Co., 183 Mo. App. 608, 167 S. W. 656; Greenwall v. Railroad, 224 S. W. 156; Dunton v. Hines, 267 Fed. 454.

RAILEY, C.—The petition alleges, among other things, that on April 24, 1917, plaintiff attended a funeral conducted by defendants Newcomer, and was one of the funeral party transported by said defendants, in conducting said funeral; that in consideration of the funeral bill paid to said defendants Newcomer, the plaintiff and other members of said funeral party, were to be transported in vehicles by them, to and from the cemetery; that after the burial, while plaintiff and the other members of said party were being transported by said defendants Newcomer, from the cemetery, as aforesaid, in a large funeral automobile, operated by said defendants Newcomer and their agents, the automobile was driven along the public highway to a certain point near the cemetery, and near the town of Mt. Washington, in Jackson County, Missouri, where said highway crosses the system and railway tracks of defendant, The Kansas

City Railways Company; that then and there, a street car operated by said Railways Company, and said funeral automobile, in which plaintiff was so riding, approached said intersection about the same time; that by the several and joint negligence and carelessness of said Railways Company in operating, managing and controlling said street car, and the defendants Newcomer and their agents and servants in managing, operating and controlling said funeral automobile, the said street car and said funeral automobile at said time collided and ran together, violently and with great force, whereby plaintiff was forcibly hurled against various portions of said automobile, caused to come in contact with other objects and was thereby severely and permanently injured.

The petition describes in detail the injuries alleged to have been sustained by plaintiff, and charges that he has been damaged to the extent of $50,000, etc.

Each of the above-named defendants filed a general denial.

The trial was commenced on May 12, 1919, before Judge Bird and a jury.

It is undisputed that the Railways Company was operating a line of railway between Kansas City and Independence, Missouri, and that it was operating the street car which injured plaintiff on April 24, 1917. It is also uncontroverted that the defendants Newcomer were the undertakers conducting said funeral, and that for the consideration paid them plaintiff and the other pallbearers were to be transported to the Mt. Washington Cemetery and return, in the automobile of said defendants. It is also uncontroverted that after the funeral plaintiff and about four or five of the above pallbearers were riding in the Newcomer automobile when plaintiff was injured.

The evidence tends to show that "Mount Washington Cemetery" is located south of the railway track. At the east end of the cemetery there was a public highway extending north and south, which crossed the railroad track practically at right angles. A short distance west

of where the street railroad track crossed said public road, there is a covered station on the north side of the railroad track, located about twenty-five feet west of a post mentioned in the evidence. The front vestibules of street cars going east are usually stopped about at this post, where passengers get on or off the car. It was about 106 feet from the entrance of the cemetery north to the railroad track. It is about a four or five per cent up-grade from the cemetery to the railroad track. The distance by actual measurement, from the post above mentioned, to the center of the crossing where plaintiff was injured, is 50 or 51 feet. About 90 feet west of said post is a sign, designated as "Mt. Washington." This is where pedestrians get off to go into the cemetery through a gate. The highway runs northeast as it leaves the cemetery, and then runs practically north across the railroad track. The automobile, by reason of said collision, was carried east down the street car track about twenty-six feet from the center of said highway. It was a Cadilac, seven-passenger automobile, and weighed about 4,000 pounds. The accident occurred about the middle of the day. The street car was traveling east, and the automobile going north, when the collision took place. The east end of the street car struck the automobile near its middle and carried it the above distance of twenty-six feet. Plaintiff was injured in the collision, and sued both defendants to recover the damages sustained by him, on account of the alleged negligence of defendants.

In order to avoid repetition, the remainder of the facts will be considered in the opinion.

The instructions given and refused, as well as the rulings of the court during the progress of the trial, will be considered, as far as necessary, in the opinion.

The jury returned a verdict for $30,000 against both defendants and judgment was rendered accordingly. Defendants filed separate motions for a new trial, and separate motions in arrest of judgment. All of said

286 Mo.—39

motions were overruled, and both defendants appealed to this court.

I. Both the Railways Company, and defendants Newcomer, are strenuously insisting that the trial court committed error in overruling their respective demurrers to the evidence at the conclusion of the case. As these contentions are not based upon the same evidence, and as the testimony of each tends to shift the responsibility for plaintiff's injuries to the other defendant, it will be necessary to dispose of their respective contentions separately.

*Separate Defenses.*

II. Before considering either demurrer to the evidence, it is important to determine whether the alleged negligence of the automobile driver was imputable to plaintiff. The latter was sitting on the rear seat of the automobile and on the west side of same, from which the oncoming car was approaching. It is undisputed that plaintiff was riding in a hired vehicle, then operated by defendants Newcomer in the course of their undertaking business, and that defendants Newcomer furnished this vehicle and carried plaintiff, with other pallbearers, on account of the consideration which they had received. The plaintiff had no control over the driver of the machine, was not in anyway directing his movements at the time and place of accident, and as the collision occurred in such a short time after the gripman and driver of the machine came in view of each other, we are of the opinion that the alleged negligence of the automobile driver should not be imputed to plaintiff as a matter of law. [Moon v. St. Louis Transit Co., 237 Mo. l. c. 434 and following; Neff v. City of Cameron, 213 Mo. l. c. 359 and following; Peterson v. Transit Co., 199 Mo. l. c. 341; Sluder v. Transit Co., 189 Mo. l. c. 139 and following; Becke v. Mo. Pac. Ry. Co., 102 Mo. 544; Davis v. City L. & T. Co., 222 S. W. l. c. 885; Lawler v. Montgomery, 217 S. W. l. c. 857; Leapard v. K. C. Rys. Co., 214 S. W.

*Negligence. Imputed*

268-9; Burton v. Pryor, 198 S. W. 1. c. 1120; Montague v. M. K. & T. Ry. Co., 193 S. W. 1. c. 936; Marsh v. Railroad, 104 Mo. App. 1. c. 586; Profit v. C. G. Western Ry. Co., 91 Mo. App. 1. c. 375; Munger v. City of Sedalia, 66 Mo. App. 1. c. 631-2.]

III.  The defendant Railways Company insists that it had the right to a clear track, and that twenty-five or thirty miles per hour was not an unreasonable rate of speed for its car at the time and place of accident. We have examined the cases cited by the Railways Company, but do not consider that they are applicable to the facts of this case.  It may be true that in the country, and in places where the population is sparsely settled, a railroad company, in the operation of its train or cars, *in the absence of evidence to the contrary,* may proceed upon the theory that its track is clear, and run its cars or trains over same at a rapid rate of speed, unless prohibited by law. The principle just announced, however, has no application to the facts of this case, because there was substantial evidence offered in behalf of plaintiff, tending to show that from the time the automobile left the cemetery, until struck by the street car, it was in plain view of the motorman.  Plaintiff's evidence likewise tended to show, that the chauffeur, *without indicating any intention to stop,* proceeded on his journey, at the rate of five miles per hour, toward the crossing, until he occupied a position of peril; that instead of the motorman putting his car under control and slacking his speed so as to avoid a collision, he increased the speed to twenty-five or thirty miles per hour, and ran his car into the automobile containing plaintiff and other passengers.

The motorman, in justification of his conduct, said he received a signal from the chauffeur, which he understood to be an invitation to come on over the crossing. The chauffeur testified that he gave no signal whatever to the motorman, and he is corroborated as to this fact by at least one, if not more, of the passengers in the

*Negligence of Motorman.*

automobile. If the jurors believed the chauffeur, then they were justified in finding that the motorman was guilty of negligence in failing to have his car under control, and in increasing the speed of the car to twenty-five or thirty miles per hour, while the passengers of the automobile were in peril upon or near the crossing.

The demurrer of defendant Railways Company, was properly overruled.

IV. The defendants Newcomer likewise insist that their demurrer to plaintiff's evidence should have been sustained. The observations heretofore made, in respect to the negligence of the Railway Company, apply with equal force to the conduct of the chauffeur in charge of the automobile. The motorman testified, that he did not stop at "Mt. Washington," and his testimony is corroborated in that respect by the conductor in charge of the street car. The chauffeur testified, that when he drove on the railroad track, his car was in intermediate gear, was under perfect control, and could have been stopped instantly.

Chauffeur's Negligence.

We then have before us substantial evidence tending to show the following facts: That the street car did not stop at the post, but increased its speed to twenty-five or thirty miles per hour before reaching the crossing; that the chauffeur, before approaching the danger zone, was in plain view of the street car and saw its every movement between the post and crossing; that he either knew, or ought to have known, that a collision was likely to occur; that he unnecessarily speculated as to results, at the expense of his passengers, and failed to exercise any degree of care for the safety of those dependent upon him. The trial court committed no error in submitting to the jury the issue as to the negligence of the defendants Newcomer, under the circumstances of the case.

It may be observed in passing that paragraph 9 of Section 12 of the Laws of 1911, page 330, was in force at the date of this accident, and that said act has been

construed by the other Division of this court to mean that the chauffeur in this case, at the time of the accident, was required to exercise the highest degree of care that a very prudent person would use. [Jackson v. S. W. Bell Tel. Co., 281 Mo. 358; Monroe v. C. & A. Railroad Co., 280 Mo. 483; Threadgill v. U. Rys. Co., 279 Mo. 66.] Even if tested by the rule of ordinary care, we would not feel justified in holding, as a matter of law, that the chauffeur aforesaid was not guilty of negligence at the time and place of said accident.

V. It is claimed by defendants Newcomer that plaintiff's Instruction A. is erroneous. Said instruction is based upon the facts relating to the alleged negligence of the above-named defendants. It required the jury to find that the chauffeur failed to exercise ordinary care while attempting to pass over the crossing in controversy, before a verdict could be returned for plaintiff. If the law as declared in the other Division be held to apply to this case, these defendants got off better than they had the right to expect, as they were entitled to a verdict under said instruction "A" if the chauffeur was in the exercise of ordinary care at the time of said collision. The above contention is without merit and overruled.

*Ordinary Care.*

VI. The defendant Railways Company contends that Instruction B, given at the instance of plaintiff, is erroneous and should not have been given. It related to the charge of negligence against the street car company. In order to find for plaintiff, as against said Railways Company, the jurors were required to find that the latter was guilty of negligence, in operating said street car at a negligent, excessive and dangerous rate of speed, and was guilty of negligence in failing to have the street car under reasonable control, and that plaintiff, by reason of said negligence, or the joint negligence of both defendants, was injured thereby. Said instruction properly defined "ordinary care" and "negligence." It was

*Railway Company's Negligence.*

in harmony with Instruction Two, given at the instance of said Railways Company, and the two instructions considered together properly stated the law.

VII. The defendant Railways Company complains of the action of the trial court in modifying its instruction numbered 4, and in giving the same as modified. Said instructions read as follows:

"4. The court instructs the jury that if you find and believe fro mthe evidence that the driver of the automobile in which plaintiff was riding signaled the motorman to come on with his car, then under such circumstances plaintiff is not entitled to recover from defendant, the Kansas City Railways Company, and your verdict must be for said defendant.

"4½. The court instructs the jury that if you find and believe from the evidence that the driver of the automobile in which plaintiff was riding signaled the motorman to come on with his car, and that said motorman saw such signal, and relied thereon, and acting as a prudent person had a right to rely on such signal, then under such circumstances plaintiff is not entitled to recover from defendant, The Kansas City Railways Company, and your verdict must be for said defendant."

The court below committed no error in modifying said instruction 4, and in giving the same as modified. The above complaint is devoid of merit and overruled.

VIII. Instructions 5, 6, 7 and 8, asked by defendand Railways Company, were properly refused in view of the evidence in the case. These instructions sought to charge plaintiff with the imputed negligence of the chauffeur, and have been fully considered under Proposition Two of this opinion.

**Imputed Negligence.**

IX. Both defendants charge that plaintiff was guilty of fraud and deceit at the trial of the case, in testifying as to the extent of his injuries. They urge this in support of their respective motions for a new trial, and also

ask that the latter be sustained on the ground of newly discovered evidence. We have carefully read each of the motions filed by defendants, as well as all the affidavits filed relating to alleged newly discovered evidence. It is manifest, upon the most casual examination of said motions and affidavits, that appellants failed to use any diligence whatever in locating the residence of plaintiff, and learning, prior to the trial, from his neighbors, the same facts which they are now urging as newly discovered evidence. The defendants Newcomer were in charge of the funeral, and plaintiff, as a pallbearer, was riding as a passenger in their automobile. They must have been informed as to his residence, expecially after the accident. The petition advised both appellants that plaintiff was claiming to have been injured as follows:

*Newly Discovered Evidence.*

"His left arm was greatly bruised, wrenched, and injured; his right hand was broken and the thumb thereof dislocated; his right hip was dislocated; his left hip greatly wrenched, bruised and injured; he was ruptured and suffered a separation of his abdominal wall; his testicles, scrotum, and spermatic cord were bruised and lacerated and his entire privates injured and his sexual and procreative powers impaired and almost destroyed; his ribs and sides were greatly injured, bruised, and made sore; his chest and lungs were bruised, wrenched and congested; his respiratory organs and heart were jarred and injured; his legs were bruised and strained; his spine and back and the muscles thereof were wrenched and bruised; his kidneys and urinary organs were greatly bruised, deranged, and injured; his head and neck were greatly twisted and bruised, causing violent headaches and pains in his head and neck; his brain, spinal cord, nerves, and entire nervous system were greatly shocked, impaired, and injured, and the nerves, blood vessels, ligaments, and muscles of his whole body were greatly wrenched and injured."

It is clear that the failure of appellants to have before the court at the trial the facts stated in their said

motions and the affidavits aforesaid, was by reason of their own negligence and lack of diligence. They are in no position here to ask this court to convict the trial court of an abuse of judicial discretion in overruling their motions for a new trial and in arrest of judgment, under the circumstances presented in this record. The conclusion just announced is sustained by a long line of decisions in this State, some of which are as follows: Miller v. Whitson, 40 Mo. 1. c. 103; Cook v. Ry. Co., 56 Mo. 380; Fretwell v. Laffoon, 77 Mo. 26; Snyder v. Burnham, 77 Mo. 52; Maxwell v. Ry. Co., 85 Mo. 106; Shotwell v. McElhinney, 101 Mo. 1. c. 682-3; Tittman v. Thornton, 107 Mo. 510-11; Thiele v. Citizens' Ry. Co., 140 Mo. 1. c. 338-9; State v. Speritus, 191 Mo. 24; State v. Whitsett, 232 Mo. 511; State v. Walker, 250 Mo. 1. c. 321; Sang v. City of St. Louis, 262 Mo. 1. c. 467, 171 S. W. 347; Claxton v. Pool, 197 S. W. 349; State v. Arnett, 210 S. W. 1. c. 84; Formento v. Hines, 225 S. W. 104; MacCallum v. Wilson Printing Co., 221 S. W. 158-9; Eidson v. Met. St. Ry. Co., 209 S. W. 1. c. 577-8; Owens v. Fanning, 205 S. W. 1. c. 72; Knox v. M. K. & T. Ry. Co., 199 Mo. App. 64, 203 S. W. 226; Stahlman v. Rys. Co., 183 Mo. App. 1. c. 149, 166 S. W. 314; Grocery Co. v. Hotel Co., 183 Mo. App. 429; Aaron v. Met. St. Ry. Co., 159 Mo. App. 1. c. 315, 144 S. W. 145.

The inexcusable negligence of defendants, in failing to ascertain from the neighbors and acquaintances of plaintiff the extent of his injuries prior to the date of trial, when he was claiming in his petition to be so badly injured as aforesaid, did not justify the trial court in granting them a new trial based upon newly discovered evidence. The foregoing contention of appellants is accordingly overruled.

X. It is contended by appellants that error was committed during the progress of the trial, to their prejudice, in respect to the admission and rejection of evidence. There are some remarkable features connected with the trial of this case. Plaintiff was injured on

April 24, 1917.  He was at the hospital in Independence, Missouri, about two weeks and two days, and was treated while there by Doctors Mather, Twyman and Nixon. They found bruises on him and some other injuries, but discovered no broken bones.  He went from the hospital to his home in Kansas, and never had any other doctor examine him or prescribe for him up to the time of the trial, over two years thereafter.  He had all three of the above doctors as witnesses at the trial, but did not call on either of them to examine him at that time, to determine his physical condition before they were put on the stand to testify.  On the contrary, plaintiff took the stand in his own behalf, and covered a wide range in detailing his alleged injuries.  The above doctors were then called upon to testify as experts and to express their opinion based upon plaintiff's testimony, in relation to the various matters submitted to them.  We are not prepared to say, that the course pursued in respect to above matter is illegal, but in the orderly administration of justice the court should closely scrutinize such an unusual proceeding, and if any unfair advantage has been obtained thereby a new trial should be awarded.

It is manifest from reading plaintiff's testimony, in connection with the history of the case, that some of the grievances complained of, and graphically described before the jury, may have resulted from causes other than those which could have been attributed to said collision. Some of them may have been attributable to natural causes which sustained no relation to the negligent acts complained of by respondent.  As an illustration, plaintiff testified in chief, as follows:

"Q.  Now, I notice that you have a limp.  Have you had that limp since this injury?  A. Yes, sir.

"Q.  Just show the jury in what way you walk on that leg.  Just walk as you ordinarily do.  (Witness walking in front of the jury.)

"Q.  Why do you have that heavy limp, Mr. Mahany?  A.  Well, from this hip.  . . .

"Q. Are you able to get along on your legs at all without that heavy limp that you evidence here? A. No, sir."

There was no proof offered tending to show that said limp resulted from the collision, or that it had not been assumed for the purposes of the case. The three doctors who examined and treated him during the two weeks following the accident discovered no injury which could account for this heavy limp.

Dr. Nixon testified for plaintiff as follows:

"I got him in condition to move first, and after we took him to the sanitarium, we got him stripped off and looked over his body for injuries. He was just bruised in various places over the body, hips and shoulders and sides, just a bruised condition."

This witness further testified in chief:

"Q. What seemed to be the trouble with the right hip, Doctor? A. Well, there was a bruised condition there. We X-rayed the hip, but the plate did not show any bony injury.

"Q. Did not show that the bones were broken? A. Did not show that the bones were broken; no, sir."

Now, this was all the doctors found, in respect to this matter, two years before the trial. Neither doctor examined him at the date of the trial, or at any other time than during the first two weeks of his injury. It is not even claimed that there were any bruises on his heavy limping leg, at the date of trial, nor does it appear from the evidence that anything was wrong with the leg at that time, except the limp which had been developed after the accident. On the above showing, the doctors were examined as experts, to show that this heavy limp was permanent.

Proceeding along this line, the following hypothetical question was propounded to Dr. Nixon:

"Well, now, Doctor, it appears that he was injured April 24, 1917, and assume, . . . that since this injury he has developed a heavy limp and limps in walking;

. . . I ask you, Doctor, to tell the jury whether or not in your opinion the conditions I have described might, could or would in your opinion, have been caused by the collision and injuries mentioned?'' This question was objected to on the ground that it invaded the province of the jury, was conjectural, speculative, etc. The objection thus made was overruled, and witness answered:

''It is possible that such a condition might follow that injury.''

The plaintiff, over a proper objection, followed the above inquiry by asking Dr. Nixon if, in his opinion, this heavy limp was permanent. Witness answered: ''It is possible that it might be permanent.''

Dr. Mather, over a proper objection, was permitted to testify, that in his opinion, this limp will probably be permanent. Again, counsel, in describing plaintiff's alleged ailments, asked Dr. Mather: ''What in your opinion does that indicate in reference to his nerves or nervous system, Doctor?''

A proper objection was made to this question, which was overruled, and the witness permitted to answer: *''It is due to the strain from the accident, nerve strain, undoubtedly.*

''MR. SADLER: I ask that the answer be stricken out for the same reason.

''THE COURT: Motion to strike out will be denied. *He says that is what caused it.''* (Italics ours.)

After this illegal evidence had carried its poison to the jury, counsel for respondent asked to have the above italicised portion stricken out, and the court said, ''All right.''

The following question was propounded to Dr. Twyman, over the objection of defendants:

''Q. And if since this injury he has had trouble with that right hip and at this time has the heavy limp that you observe when he walks, and it has been more than two years since this injury, what is your opinion as to the permanency of that condition? . . .

"A.     Assuming that that is due to anatomical chang-es I, of course—I would say, just assuming in good faith that the party is not putting the limp on, if he has to do that, that he probably will always have to do that."

The admission of the foregoing testimony, as well as several other matters contained in the record of a similar character, was not only prejudicial to the rights of defendants, but in all probability was largely respon-sible for the excessive verdict in this case.     It is well-established law in this State that expert testimony is admissible within reasonable bounds, but the testimony of the expert should not invade the province of the jury, nor substitute his opinion for that of the jury upon the ultimate facts to be decided in the case.     [Deiner v. Su-termeister, 266 Mo. l. c. 521 and following; De Maet v. Storage Co., 231 Mo. 615; Smart v. Kansas City, 208 Mo. l. c. 199-203; Roscoe v. Met. St. Ry. Co., 202 Mo. l. c. 577; Glasgow v. Railroad, 191 Mo. l. c. 364; Taylor v. Railroad, 185 Mo. l. c. 256.]     The expert witnesses aforesaid were not only permitted to express their opin-ions as to conjectural and speculative matters testified to by plaintiff, but were likewise permitted, in violation of the law as announced in the above cases, to invade the province of the jury as to the ultimate facts to be determined in the case.

(a)     While an expert may express his opinion as to whether or not an injury is permanent, his answer, in order to stand the test of judicial criticism, must show that the result which he has indicated, will follow to a reasonable degree of certainty.     In other words, his opinion is incompetent, if based upon a mere possibility as to what may occur in the future.     [Campbell v. Ry. Co., 175 Mo. l. c. 177-8; McGee v. Railroad, 214 Mo. l. c. 543; McCreery v. United Rys. Co., 221 Mo. l. c. 27-8; Blythe v. United Rys. Co., 211 S. W. l. c. 696; Battles v. Rys. Co., 178 Mo. App. l. c. 619; 11 Ruling Case Law, sec. 13, p. 582; 5 Encyc. Evidence, pp. 665-6; Strohm v. Ry. Co., 96 N. Y. 305; McClain v. Ry. Co., 116 N. Y. l. c. 467-8; Briggs v. Ry. Co., 177 N. Y. 62; Selleck v. City of Janesville, 104 Wis. l. c. 574.]

The main opinions given by Doctor Nixon in answer to the hypothetical questions propounded to him by plaintiff, are based on mere possibility, as heretofore shown. This evidence went to the jury, over the objections of defendants, under the sanction of the court, as proper evidence to be considered in fixing the amount of compensation to be recovered. The admission of same was prejudicial to defendants and should have been excluded.

XI. Appellants strenuously insist that the damages assessed by the jury are grossly excessive and that a new trial should be granted on account of same. The verdict in this case was for $30,000. It was obtained under the circumstances heretofore stated.

Excessive
Verdict:
Unfair
Trial.

It is not alleged in the petition that any operation was performed upon plaintiff on account of his injuries and, yet, throughout the trial, the plaintiff, his counsel and one of his doctors, over the repeated protest of the defendants, improperly got before the jury the fact that one of plaintiff's testicles was removed by an operation, and evidently created the impression upon the minds of the jurors that he ought to be compensated therefor. The plaintiff in chief testified:

"Q. Why do you have that heavy limp, Mr. Mahany? A. Well, from this hip. These leaders through here (indicating) on this side where I was operated on" etc.

On objection being made as to an operation, plaintiff's counsel kindly consented that it might be excluded. In his hypothetical question to Dr. Nixon, heretofore mentioned, counsel for plaintiff told the doctor to assume "that the one testicle which he (plaintiff) now has is enlarged," etc., thereby again calling the attention of the jury to the fact that one of plaintiff's testicles had been removed by said operation. Counsel for plaintiff, in framing a hypothetical question submitted to Dr. Mather, said:

"Doctor, it appears from the evidence here that the one testicle which this man now has is enlarged" etc. Dr. Mather was asked by plaintiff's counsel for an opinion as to respondent's nervous system and answered as follows:

"His nervous condition, of course, was shattered and injured following the accident, possibly due to the removal of the testicle." This was also objected to, and the jury directed not to consider same.

It is manifest, from the foregoing, that plaintiff's operation, and the loss of one of his testicles, was deliberately injected into the case for the illegal purpose of augmenting the damages herein. It was well calculated to have that effect, and we have no doubt from the size of the verdict aforesaid must have succeeded admirably.

Under ordinary circumstances where the verdict is excessive, the court may require a *remitittur* and affirm it as to the balance, but, in this case, we have reached the conclusion that defendants have not been awarded a fair and impartial trial under the Constitution and laws of our State.

Without extending this discussion further, we hereby reverse and remand the cause for a new trial. *White, C.,* concurs; *Mozley, C.,* not sitting.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.