Jay Hugh RODENBERG, by Walter Roden-
berg, His Next Friend, Respondent,

v.

Donald Wayne NICKELS, Appellant.

No. 23468.

Kansas City Court of Appeals.

Missouri.

April 2, 1962.

Ike Skelton, Newton R. Bradley, Lexington, Skelton & Bradley, Lexington, of counsel, for appellant.

D. W. Sherman, Jr., William Aull, III, Lexington, Sherman & Sherman, Aull & Aull, Lexington, of counsel, for respondent.

MAUGHMER, Commissioner.

This is a damage suit for personal injuries. It arose out of an automobile collision which occurred at a highway intersection in Lafayette County, Missouri. Plaintiff, Jay Hugh Rodenberg, by his next friend, had the verdict and judgment for $14,070. Defendant Donald Wayne Nickels has appealed.

At the time of this accident County Route "D" was a black top road running north and south. New U. S. Highway 24 runs east and west and intersects Route "D", but not at an exact right angle. The intersection of these highways where the accident occurred was graveled. At approximately 6:00 p. m. on Saturday, November 1, 1958, plaintiff, then 16 years of age, was driving his father's Chevrolet pick-up south on Route "D". Defendant, accompanied by a boy named Danny Wilson, was driving a 1955 Ford sedan east on Highway 24, which highway had not been completed and was not open for travel by the public. The weather was clear. The roadways were dry. No other vehicles were in the immediate vicinity. Both cars had their headlights on and there is no suggestion that either driver had been drinking.

Plaintiff testified that he approached the intersection at a speed of 20 to 30 miles per hour; that he saw defendant on top of a hill to the west and noticed him a second time when plaintiff was "approximately 110 to 120 feet" from the intersection and that "defendant's vehicle was then ⁹/₁₀ths of a mile away". Plaintiff said he slowed down but did not stop before the collision which occurred when he "had my front end off the pavement, but I suppose the bed of the truck was still on the pavement". Plaintiff said he heard "brakes squealing", glanced through his window, saw defendant's car "on the south side of the south half of the pavement coming towards me sliding". He said defendant's car slid into the right rear of the pick-up, and turned it over into the ditch on the east side of Route "D", headed north. The Ford came to rest on the south side of the pavement, east of the intersection, lying on its side and headed north.

It was defendant's version that as he approached the scene his speed was approximately 65 miles per hour. He had never traveled this highway before and had passed through or around some barricades to enter upon it. He said he saw plaintiff's truck before it entered the intersection and when it was back "around the ditch line". He said plaintiff at the time "was going slow enough, I thought he was going to stop". He gave it as his best judgment that when he first realized plaintiff was not going to stop, he was still traveling about 65 miles per hour and was approximately 200 or 250 feet from the point of collision. He said he applied his brakes and "pulled to the

right", but "my left front fender hit his right rear side—about the rear wheel, rear fender".

Trooper John W. Wright of the Missouri State Highway Patrol, arrived at the scene before the cars had been moved. He found defendant's Ford in the south drainage ditch of Highway 24, east of the intersection, and plaintiff's car in the east drainage ditch of Route "D". There were sidewise sliding tire marks for a distance of 57 feet made by the pick-up. The trooper stated that Highway 24 was not open for travel at the time, and there was a "closed" sign at Levasy, where defendant said he entered upon it. The trooper measured skid marks made by defendant's car for a distance of 198 feet west of the place of collision.

Plaintiff recalls walking away from the accident toward his home, which was nearby. When he arrived there he was accompanied by defendant and Mr. Alvin Bordman, a neighbor. In describing his injuries apparent to him at the time, plaintiff said: "I had a cut across my nose, and I had just pieces of—slivers of glass in my head where I went through a window; and my back at this time had started to hurting me and I had a little trouble walking; my back and legs started to hurting me".

On the evening of the accident plaintiff was taken to Wellington and there saw Dr. Armbruster, who gave him pills to ease the pain, cleaned up the cuts, stopped the bleeding and told him to come back on the following Monday for x-rays.

Dr. Ben H. Brasher, M. D., Lexington, saw plaintiff on Monday, November 3, 1958, at his office. Dr. Brasher testified that he found lacerations on the face; that the patient walked with difficulty, and there were bruises over the right kidney. X-rays revealed a "fracture of the second, third and fourth transverse processes on the right side". He sent him to the hospital that evening. Examination the next day revealed "a very mild muscle spasm" of the neck, which the doctor described as resulting from a "whiplash" injury. Plaintiff remained in the hospital 17 days and until November 20. This doctor prescribed keeping him on a board mattress, hot packs to his back, routine treatment to relieve muscle spasms, and no strenuous exercise. Dr. Brasher saw plaintiff thereafter on the following December 13th, January 10th, February 6th and October 3rd. He found the bones were being healed by calcium deposits, but he still had a mild whiplash. He said the third process had been completely broken and had healed with some deformity. This doctor, a general practitioner, thought the patient should see an orthopedist and recommended Dr. Williamson and Dr. James.

Dr. Otis E. James, Jr., orthopedic surgeon, of Kansas City, Missouri, examined plaintiff in his office in December, 1959. He found no muscle spasm and said the back motion was restricted about 25 percent forward, backward and to the side. There was "decreased sensation" in the lower extremities, but the reflexes were normal. He said the patient complained of dull aching back pains with radiation, but no numbness in the lower extremities. Dr. James expressed the opinion that the back injuries had a degree of permanence which he estimated as approximately 10 percent disability.

Plaintiff stated that before the accident he had helped his father who was a bulk oil distributor, and the work included helping to lift 150 and 300 gallon tanks. He said he was unable to do this after the accident. In the fall of 1959, he returned to school. He said he still had pains in his head, back and neck with "catches" in his back. He tried to play basket ball during the following winter but quit because it hurt his back and he "didn't feel well". He stated that at the time of the trial (January 30, 1961) he still suffered with headaches and backache.

Dr. Glenn Twente, chiropractor, gave plaintiff a total of 28 treatments from June

24, 1960 to the time of trial. He also took x-rays and found misalignment of the upper cervical spine, with the second vertebrae in the neck out of line and pressing on the nerves.

On the second day of the trial, plaintiff, with leave of court, filed his second amended petition. The prior pleading alleged generally injuries to the head, body, limbs and spine. As amended, specific claims of broken transverse processes, a whiplash injury, and injuries to the right kidney were made. Objections had been made earlier to receipt of evidence as to these specific injuries. Defendant says it was error to permit the filing of this amended pleading over his objection "and denying defendant's request for a continuance". Examination of the record reveals that the trial court, after examination of the deposition of a Dr. Ward, believed these specific injuries had there been considered and inquired into. The trial court for that reason and because of the following provisions of Supreme Court Rule 55.54, V.A.M.R. "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby * * *. The court may grant a continuance to enable the objecting party to meet such evidence", allowed the amendment and denied a continuance. We believe plaintiff was entitled to so amend his petition. We also agree with the trial court that such amendment did not prejudice defendant in "maintaining his defense upon the merits" as contemplated by Rule 55.54. This point is ruled against defendant.

Defendant asserts the court should have directed a verdict for defendant because the evidence shows that as a matter of law plaintiff was negligent in failing "to keep a proper lookout for defendant's automobile". The evidence is quite clear that plaintiff entered the intersection first. Defendant himself said that when he first re-

alized plaintiff was not going to stop, plaintiff was at the ditch line, only a few feet from the intersection and defendant's vehicle was then 200 or 250 feet from the intersection. Defendant's car left skid marks for 198 feet before striking plaintiff's car on its right, rear side. The question of plaintiff's negligence or contributory negligence was submitted to the jury by proper instructions. Under this evidence we certainly agree with the trial court in refusing to rule that plaintiff was guilty of contributory negligence as a matter of law so as to justify directing a verdict against him.

On the voir dire examination of the jury, plaintiff's counsel asked five general questions as to the panel members' possible connection with defendant's insurer. These inquiries were as to stockholder, present employment, policyholder, past employment, and claim adjusters. The correct name of the company as given by defendant's attorneys was "Western Casualty & *Surety* Company of Fort Scott, Kansas". In the questions the correct name was used once and four times the word *"insurance"* was substituted for *"surety"*. Defendant objected that these questions were "unnecessarily repetitious", prejudicial, and asked for a discharge of the jury. This ever-recurring issue was recently discussed by the Supreme Court in Gooch v. Avsco, Inc. et al., Mo., 340 S.W.2d 665, 667, 668, and the court said:

"It is, of course, proper on voir dire to ascertain what connection, if any, prospective jurors have with an insurance company which is interested in the defense of the case on trial, provided pertinent inquiries are properly made for the purpose of determining the qualifications of prospective jurors. Dooley v. Dooley, Mo.App., 290 S.W. 2d 856, 857(1). And it is within the province of the trial judge to reasonably circumscribe the voir dire inquiry in that respect by limiting the number of questions and imposing other curbs on the nature of the examination. While it was undoubtedly proper on

voir dire to determine whether any member of the panel was employed as a claims investigator or adjuster, it perhaps would have been desirable to have inquired generally rather than to have limited the question to insurance company adjusters. It seems apparent, however, that the adjuster question as asked could not have injected the matter of insurance any more surely into the case than had been done by the three prior questions which defendants concede were proper and to which no objection was made. In any event, the record heretofore set forth makes it clear that the trial court did not abuse its discretion in refusing to discharge the panel. Haley v. Edwards, Mo., 276 S.W.2d 153, 160(4–6)".

We shall not hold the trial court abused its discretion in this case by refusing to discharge the jury. However, we observe that there is surely a limit to the number and extent of these questions. Counsel in their zeal should not entirely forget such limitations.

■ Appellant asserts the trial court erred in giving Instructions P–1 and P–2. Instruction P–1 submitted that if plaintiff was going south on Route "D", and defendant was traveling east on Highway 24, which had not been opened for public travel, then plaintiff had the right-of-way and "in the event plaintiff had either entered the intersection or had approached so closely thereto as to constitute an immediate hazard" and then defendant failed to yield the right-of-way and was thereby negligent and that plaintiff was not negligent, and as a direct result plaintiff was injured, the verdict should be for plaintiff. Appellant says this instruction gave plaintiff "an unqualified and absolute right-of-way". We do not agree. The instruction stated that if plaintiff had entered the right-of-way or was so close as to constitute an immediate hazard, it was defendant's duty to yield and if he negligently failed to do so, plaintiff could recover.

In Price v. Nicholson, Mo., 340 S.W.2d 1, 10, a humanitarian case, Instruction No. 1 provided: " * * * if you further find and believe from the evidence that *at the time and place mentioned in evidence*", the two automobiles "*were* in imminent peril of striking and colliding with each other * * *". Defendant contended this instruction gave the jury a roving commission and unduly broadened the danger zone. The court en banc said: "To require more as defendant would have us do, in effect would require a plaintiff before he has prepared his instruction to determine the exact place and time prior to which he could not as a matter of law have been in a position of imminent peril. This is both unrealistic and unnecessary to a fair submission". It might tend to confuse rather than to clarify.

If plaintiff had entered the intersection first that was sufficient. Defendant's testimony placed plaintiff's car "around the ditch line" or just a few feet from the intersection and his own car then 200 or 250 feet from the intersection and traveling 65 miles per hour. When plaintiff last saw defendant, except immediately before the collision, he was "⅗oths of a mile away". If defendant thought the instruction needed clarification and had the courage to attempt it, he should have done so. In this case defendant admits he was 200 or 250 feet away when plaintiff was about to enter the intersection. Under these unusual facts and testimony, it was not error to give the instruction.

■ Appellant objects to that portion of Instruction P–2 which authorized the jury to consider the physical pain and suffering which plaintiff "may, *in the future, be reasonably certain to suffer". (Italics ours). The evidence shows plaintiff received three fractured transverse processes, one of which, according to Dr. Brasher, had healed with some deformity. Plaintiff, at the time of trial, complained of headaches and backache. Dr. James gave it as his opinion plaintiff had received permanent injuries. It is our opinion that this

evidence was sufficient upon which to base a submission of the issue as to future pain and suffering. We rule it was not reversible error to give Instruction P–2.

■ Dr. James, orthopedic surgeon, was asked this question:

"Q. Would you say, in your opinion, the extent of permanent disability and the percentage?

"MR. SKELTON: We certainly object to the doctor invading the province of the jury in trying to assess the percentage. He can state the facts and the jury will pass upon that. That is a jury question and not a question of expert opinion in a case of this nature and I object to it.

"THE COURT: The objection will be overruled.

"A. I would estimate the permanent injury as around 10 per cent.

"Q. Is that of the body as a whole, doctor?

"A. Yes, sir".

In Knipp v. Mankin, Mo., 336 S.W.2d 371, 374, 375, the doctor was permitted to express his expert opinion that plaintiff's percentage of loss in his back was "in the neighborhood of 50 per cent". The Supreme Court said:

"Defendant contends that the question of the percentage of disability is not a proper subject for opinion testimony by a medical expert; that by reason of their wide experience jurors are in a better position to estimate the extent that an injury will disable a person than are medical experts.

"No Missouri case has been cited which deals with the question presented. However, in Ott v. Perrin, 116 Ind. App. 315, 63 N.E.2d 163, 166, it was held proper to permit a medical expert to express the opinion that the plaintiff 'had lost from one-third to forty percent of his usefulness as the result of his injuries.' Also, in Skelly Oil Co. v. Harrell, 187 Okl. 412, 103 P.2d 88, 90, expert testimony was held competent to the effect that 'respondent has a 25 percent disability to his right leg and that this disability is permanent.' In Missouri the courts have held that an expert may express the opinion that an injury is permanent, Mahany v. Kansas City Rys. Co., 286 Mo. 601, 228 S.W. 821, and that the plaintiff is totally disabled. Stearns v. Prudential Ins. Co. of America, 235 Mo.App. 135, 140 S.W.2d 766. If it is proper for an expert to express the opinion that a person is totally disabled it would seem proper to permit expert testimony that he has sustained a percentage of disability. We have been unable to think of any logical reason why a qualified medical expert should not be permitted to express the opinion that a person has sustained a certain percentage of disability in a certain area of the body. It seems to us that such an expert would be better qualified to evaluate the effect of an injury in limiting the use of a certain part of the body than would the average juror. We accordingly rule that the court did not err in permitting the testimony complained of."

Under this recent ruling by the Supreme Court the answer given by Dr. James was permissible.

■ Dr. G. L. Williamson, orthopedic surgeon, to whom plaintiff had been referred by Dr. Brasher, wrote a letter dated October 31, 1959, to Mr. Sherman, one of plaintiff's attorneys, reporting on his examination of plaintiff which was made July 16, 1959. He sent a copy of this letter to Dr. Brasher, who placed it in his office files. Defendant's offer of this letter or the copy was refused. It is contended that the letter was admissible under Sections 490.-670 and 490.680, V.A.M.S. as a "business record" of Dr. Brasher. These Missouri statutes include the medical profession as a

"business". Section 490.680, supra, declares: "A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission". This proffered document was not a record "made in the regular course of business", by either of the doctors. At most it is a report about an examination and by letter written three and a half months after the examination it purported to describe and addressed to plaintiff's attorney. A copy was sent to the forwarding physician, Dr. Brasher, and as a part of his records it was offered in evidence. No real effort was made to qualify this letter for admission as a "business record". Denial by the trial court of its reception in evidence under the above statutes as a "business record" was not error.

Lastly, it is contended the verdict is excessive and defendant is entitled to either a new trial or to a remittitur. Our attention is invited to certain Missouri decisions which appellant says support this contention.

In Herr v. Ruprecht, Mo., 331 S.W.2d 642, a verdict for $45,000, reduced by the trial court to $22,500 was ruled still to be excessive. But in that case plaintiff worked regularly for about 14 months after the automobile collision at the same job and for the same compensation as before. In addition, plaintiff had received a second injury by falling on the ice, which fall was not caused by the automobile collision, but evidence as to these injuries was received and probably contributed to the size of the verdict.

Dye v. St. Louis-San Francisco Ry. Co., Mo., 234 S.W.2d 532, holds the trial court did not abuse its discretion in granting a new trial on the ground the verdict was excessive.

■ Appellant refers to Godsy v. Thompson, 352 Mo. 681, 179 S.W.2d 44, where a 30 year old switch tender suffered fractures of the left 1, 2, 3 and 4 transverse processes and a $10,000 verdict was not disturbed. The difference in dollar value between 1944, when the Godsy judgment was entered, and today would, we think, more than take care of the $4,000 difference in our verdict. The Supreme Court of Mississippi (Arnold et al. v. Ellis, 231 Miss. 757, 97 So.2d 744, 747) commented as to the amount of damages when the claim of excessiveness is presented. The court said: "It is practically impossible to prove the exact dollar and cent value of pain in varying degrees. Such determination must be left to the jury, who, in the exercise of common sense and judgment, are vested with the right and duty to make a fair appraisal of the amount which should be awarded as compensation for that element of damage". While the quoted comment is restricted to pain, the general rule is applicable to other elements of damage.

■ In our particular case we have a 16 year old boy who received back fractures. He had substantial disability at least for a time. Moreover, plaintiff's own testimony and that of his doctors, if accepted by the jury at face value, showed that at the time of trial he had some pain, discomfort and a permanent disability. In the usual course of events, most of his life is still ahead of him. He was out of school for a part of one year and has foregone the privilege and pleasure of participating fully in school athletics. The purchasing power of the dollar has steadily and rapidly depreciated during the last several years. While the verdict for the injuries in this case is of sufficient size to cause us to carefully consider the charge of excessiveness, we cannot so rule it. We are not convinced that it should be attributed to bias, prejudice or overwrought sympathy on the part of the jury. The trial judge,

who was present throughout the trial, in the exercise of his discretion, refused to overturn the verdict. We are in accord with that decision.

We find no reversible error and the judgment is affirmed.

SPERRY, C., not sitting.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.