THE STATE v. W. A. MATKINS, Appellant.—34 S. W. (2d) 1.

Division Two, December 20, 1930.

*J. K. Owens* for appellant.

*Stratton Shartel,* Attorney-General, and *Carl J. Otto,* Assistant Attorney-General, for respondent.

COOLEY, C.—By an indictment returned in the Circuit Court of Sullivan County, defendant was charged with embezzlement of $2990.30 of the public moneys, to-wit, the state and county revenues belonging to Sullivan County and the State of Missouri, received by him and in his possession and custody as County Treasurer of said county; it being further alleged in the indictment that the particular sources or funds from which he received the moneys could not be stated, because, instead of keeping the revenues in separate and distinct funds as required by law, he commingled all together. Upon defendant's application a change of venue was awarded to the Circuit Court of Linn County at Brookfield where the cause was tried, resulting in defendant's conviction and sentence to two years' imprisonment in the penitentiary, from which he appeals.

The indictment, returned September 13, 1928, charges the offense to have been committed on or about April 30, 1928. Defendant was then and during all the time involved herein, Treasurer and Ex-officio Collector of Sullivan County, that county having theretofore adopted township organization. His books and accounts as treasurer were audited in 1928, the examination occupying about a month, from July 12 to August 10, revealing a shortage, and on September 6, 1928, the office was "taken over" by another. The evidence was directed particularly to the period from May 1, 1927, to April 30, 1928, and the particular item referred to in the indictment seems to be a shortage in the moneys received for delinquent or back taxes between the dates last mentioned, since the amount charged to have been embezzled corresponds with the shortage shown by the State's evidence in moneys so received between those dates.

Mr. Wilson, County Clerk, identified and there were introduced in evidence the monthly reports made between the dates above named by defendant as Ex-officio Collector, showing the amounts of delinquent taxes collected each month, and the evidence shows that "those reports were taken to the County Court, they were filed as the quarterly settlements of the Treasurer." It was shown that when delinquent taxes were paid duplicate receipts were made out, one being given to the person paying the tax and the other left in the tax receipt book, which, according to the State's evidence, was kept in and constituted part of the records of the Treasurer's office. These books containing the duplicate tax receipts for the year from May 1, 1927, to April 30, 1928, were introduced in evidence and are referred to by witnesses as the delinquent tax books.

Mr. Wilson testified that shortly before the audit was begun he, with defendant, checked the latter's records as Treasurer. Asked what, if anything, was said by defendant about the shortage, he replied: "He said the shortage wasn't as much as it showed."

Frederick S. Craig, an experienced certified public accountant, audited the books, assisted by one Gibson, his employee. His testimony

tends to show that he made a thorough examination and audit of the records, papers and files of the office. He was examined and cross-examined at great length. He testified that the result of his audit showed that defendant as Treasurer had net cash to account for as of date July 12, 1928, amounting to $68,226.41, and that he had actual cash in bank amounting to $38,996.10, and that there was $29,230.31 cash not accounted for; and that as to the item of delinquent tax money between May 1, 1927, and April 30, 1928, the audit, based upon delinquent tax records for that period, revealed that the correct amount with which defendant as Treasurer should have charged himself and which he should have reported in his settlement was $30,-759.76, whereas in his settlements he charged himself with and reported $27,769.46, leaving a shortage of $2990.30.

In arriving at the latter sum adding machine lists were made from the back tax records by months from May 1, 1927, to April 30, 1928. While this was being done and the lists checked, defendant was present and when this work was about completed was asked by Craig if he did not know that the monthly statements he had made "were not in accordance with the summaries as we had drawn off the books," to which he replied: "Yes."

It further appeared from Craig's testimony that defendant as Treasurer did not keep a cash book showing where each item that he put in the bank came from or what it was for; that the state and county money was commingled and deposited in one account in the bank in defendant's name as Treasurer, though it could not be ascertained whether or not he deposited all the money he received. The bank account did not show what part was state revenue and what part county revenue. It further appeared that it was impossible to tell from the record what part of the shortage was of money belonging to the State and what part was of money belonging to the county. He said, however, that the books showed what *ought* to be in the bank belonging to the different funds. "The money in the bank didn't agree with the amount that should have been there."

It was shown that defendant issued three checks of $1,000 each against his account as Treasurer, which were paid out of that account. as follows: One dated April 7, 1928, payable to the order of F. M. Coleman; one dated April 4, 1928, payable to the order of C. A. Busick, and another dated April 18, 1928, payable to the order of C. A. Busick. These checks were all indorsed by the respective payees, apparently were cashed in Chicago, judging from other indorsements, and were presented to the depositary banks at Milan, Sullivan County, on which they were drawn, through correspondent banks. Busick at that time lived in Chicago. Coleman evidently did also, as he indorsed the Busick checks with Busick. The checks above mentioned are, respectively, State's exhibits 22, 23 and 24. Exhibit 24 has a

notation indicating that it was in payment of warrant No. 28. Warrant No. 28, for the year 1928, was shown to have been $12, issued to E. L. Phillips for board of prisoners. Similarly numbered warrants in 1927 and 1926 were for trifling amounts issued to persons other than Coleman or Busick.

Mr. Wilson testified that there was no record showing any warrant ordered or issued either to Coleman or Busick, no order for the payment of money to either of them, and no record of any contract of any kind between them or either of them and the county. He knew of no notes given for either of the checks or the money represented by them.

Defendant attempted to show by cross-examination of a State's witness that Busick had given a chattel mortgage for $3,000 either to Sullivan County or to Matkins as Treasurer, but succeeded only in showing that witness *thought* "there was a mortgage given for four thousand dollars;" he did not say to whom, but thought a Mr. Murdock, who was not a member of the county court, had it then, and that witness had never heard of the county court or the judges thereof having it.

Defendant did not testify and offered no evidence except to call the prosecuting attorney to identify three indictments which had been returned against defendant in Sullivan County. Changes of venue had been taken by defendant in those cases, and they had been sent to the Circuit Court of Linn County at Brookfield and were there pending when the trial of the instant case began, but during that trial and before the State rested its case they were dismissed by the State. Defendant offered the indictments in evidence for the purpose of showing that they charged him with having unlawfully loaned to Coleman and Busick the money represented by Exhibits 22, 23 and 24, offenses different from the one for which he was on trial; the contention seemingly being that the giving of those checks amounted to distinct and different offenses and therefore could not properly be considered in this case. Upon objection by the State the indictments were excluded. The indictments were not copied in the bill of exceptions and except for statements of defendant's counsel in connection with his offer and in objections to the introduction of the checks, there is no showing as to what the indictments charged. No error is assigned in appellant's motion for new trial, nor in his brief, because of the exclusion of the proffered proofs.

I. Appellant filed motion to quash the indictment on the grounds, first, that the grand jury "was not legally drawn nor sworn as provided by law," and second, that it did not state facts sufficient to constitute a crime. On the second ground he also objected to the introduction of any evidence. Error in those rulings is claimed.

No showing was made in support of the first ground of the motion to quash and it has been abandoned. Appellant's contention in support of the second ground of his motion to quash, repeated in his objection to the introduction of evidence, is based upon the fact that the indictment charges that the moneys embezzled belonged to the *State and county*, whereas appellant insists it should have charged ownership in and embezzlement from either the State or the county alone. In support of this point appellant relies upon the case of State v. Martin (Mo.), 204 S. W. 537. In that case the indictment charged that the defendant as Treasurer of Camden County had charge of the public moneys belonging both to the State and to the county, but charged him with embezzling only moneys belonging to "said County of Camden." The proof failed to show "whether the deficit was in the money belonging to the county or to the State." The court held that, having been charged with embezzling money belonging to the county he could not be found guilty as charged in the indictment unless the evidence showed that he did embezzle money belonging to the county as distinguished from money belonging to the State.

The instant case is distinguished from the Martin case. Here it is alleged that the money belonged to the State and county and that because of defendant's own act in commingling the State and county funds it could not be determined and therefore could not be alleged to which particular fund the embezzled money belonged. The proof showed the facts to be as alleged. Whether it belonged to the State or to the county or in part to both it was all public money which had come into appellant's custody by virtue of his office, as charged. Embezzlement of public moneys which were in defendant's custody by virtue of his office was the gist of the offense charged. [State v. Flint, 62 Mo. 393; State v. Hays, 78 Mo. 600.] It would be strange doctrine and very convenient for dishonest officials for us to hold that an officer having by virtue of his office custody of public moneys belonging properly to different funds or different municipalities could defeat prosecution for embezzling such moneys by commingling them in one account in such way that it would be impossible to prove to which particular fund or municipality the embezzled moneys belonged. We are not willing to place our stamp of approval upon such doctrine.

The indictment in this case is in all material respects identical with that in State v. Baker (Mo.), 285 S. W. 416, which, like the instant case, was a prosecution for embezzlement by a county treasurer of public moneys alleged, as in this case, to have belonged to the State and county and to have been commingled so that the particular funds to which they belonged could not be determined. The substance of the indictment in the Baker case is set out in the opinion. It was attacked on the same ground as in this case, with the additional claim that it commingled two offenses in one count. It was approved and the conviction thereunder was sustained, although the proof did not

establish to which fund the moneys belonged. The indictment in this case is so like that in' the Baker case as to lead to the conclusion that it was modeled on the latter, wherefore we shall not burden this opinion by setting it out. Appellant's motion to quash the indictment and his objection to the introduction of evidence thereunder were properly overruled.

II. Appellant urges that his demurrer to the evidence should have been' sustained. This contention is based largely upon the proposition above discussed, that the indictment did not charge nor the proof show whether the moneys alleged to have been embezzled belonged to the State or to the county. That contention has been sufficiently answered by what we have said in Paragraph I. See also State v. Baker, supra, in which the facts are similar. That case, as this, was submitted upon instructions authorizing conviction if the jury found that money belonging to the State and county had been embezzled without requiring the jury to find to which of the two funds it belonged or that it belonged jointly to both.

For like reasons the court properly refused appellant's requested Instruction A, which was predicated upon the theory that there could be no conviction unless the jury could determine and find from which particular fund the money so converted, if any, was taken.

The further contention that the evidence did not authorize a finding that any money had been embezzled cannot be sustained. There was evidence tending to show a general shortage of over $29,000 in the amount of cash which defendant as Treasurer should have had on hand and a shortage of $2990.30, the sum named in the indictment, in the cash received for delinquent taxes between May 1, 1927, and April 30, 1928, that is, that he had received that much more than he charged himself with in his settlements. The shortage was not accounted for. Defendant virtually admitted to the county clerk that there was a shortage, claiming that it was not as great as it appeared to be. He admitted to Craig that he knew his settlements filed with the county court did not correctly show the amounts received by him for delinquent taxes as shown by his records, and he offered no explanation of the discrepancy. He drew checks to Coleman and Busick aggregating $3,000 which were paid out of his account as Treasurer, that is, out of the public money in his custody, which were not authorized, were not shown to have been for any public benefit or legitimate purpose, and which are unexplained in the record. The inference is at least permissible that they were given for some private purpose. It was not necessary to show that appellant himself got the money if his dealings therewith were such as to exclude the owners' dominion. [State v. Meininger (Mo.), 268 S. W. 71, and cases cited; State v. Morro (Mo.), 281 S. W. 720.] We think there was suf-

ficient evidence to authorize submission of the case and to sustain the verdict.

III. Appellant assigns error in that witness Craig was permitted to testify as to his examination ·or audit of certain books which were not introduced in evidence. It was shown that the books and records were in the court-room and accessible to appellant if he cared to use them in cross-examining the witness, but defendant claims they could not properly be referred to unless first introduced in evidence. Some of the records were introduced; others about which the witness testified to some extent were not, but, as stated, were in the court-room. It is questionable whether defendant sufficiently preserved this point in his motion for new trial to entitle him to review thereof but, giving him · the benefit of the doubt, we think the objection not well founded.

The cases cited by appellant do not sustain the claim that the records and papers examined must all be introduced in evidence before an expert who has examined them can give the result of his examination. Appellant quotes the rule as announced in Masonic Mut. Benefit Society v. Lackland, 97 Mo. 137, 10 S. W. 895, as follows:

"Where the evidence is the result of voluminous facts, or of the inspection of many books and papers, the examination of which cannot conveniently take place in court, or where a witness has inspected the accounts of the parties, though not allowed to give evidence of their particular contents, he will be allowed to speak of the general balance or result of such examination, and such statement is not hearsay."

In that case the books, vouchers, etc.. were in the court-room and were used by both sides from time to time, but it is apparent from the opinion that they were not introduced in evidence. In State v. Findley, 101 Mo. 217, 223, 14 S. W. 185, the witness had spent three days and nights examining "tax books, receipt stubs and other papers." The court said:

"These books and papers were present on the trial and *the books* were in evidence. The witness was allowed to give the result of his examination,· and there was no error in this ruling. It was but giving the result of a mass of books and papers too voluminous to be conveniently examined in court, and in such cases it is competent for the witness to speak as to the result of the accounts." Citing authorities. (Italics ours.)

Note that only the books, not the papers and records audited were in evidence. In Citizens' Trust Co. v. Ward, 195 Mo. App. 223, 190 S. W. 364, a witness was permitted to testify to the condition of bank books and records which were not introduced in evidence and so far as the opinion discloses were not even in the court-room, and it was held that no error was committed.

The foregoing are all the Missouri cases cited by appellant. None of them holds that the records examined by an expert witness, in a case where the result of such examination may be given because of the voluminous character of the records, must first be introduced in evidence. The rule as stated in the textbooks on the subject does not indicate that such introduction in evidence is essential. It would in many cases be impracticable if not impossible. [See Greenleaf on Evidence (16 Ed.), vol. 1, sec. 563h; Wharton's Crim. Ev. (10 Ed.), vol. 1, sec. 166.] In this case the records referred to were in the court-room and could have been used by appellant in cross-examination of the witness. We think no error was committed in permitting the witness to testify to the result of his examination of the records, including those not introduced.

IV. Appellant alleges error in the admission of exhibits Nos. 22, 23 and 24, because it is claimed they tended to show other offenses than that for which defendant was on trial. They were offered apparently for the purpose of showing intent. On this subject we said in State v. Wilcox, 179 S. W. 479, 480: "The general rule excluding evidence of other offenses is invoked. There are exceptions to that rule. A vital issue of fact in prosecutions for embezzlement is the intent of the defendant. Other offenses intermixed with that on trial . . . or any such as are of a character tending to prove a fraudulent intent in the act under investigation may be shown upon the question of intent." [Citing cases.] See also State v. Foley, 247 Mo. 607, 635, 153 S. W. 1010.

It is also well established law, based on too sound reason to admit of dispute, that evidence which tends to prove the particular offense for which a defendant is on trial is admissible though it may also tend to prove another and distinct offense. In the instant case the checks tended to show the conversion of approximately the amount named in the indictment. The admission in evidence of those exhibits was proper.

V. At the close of witness Craig's testimony, defendant moved to strike out *all of his testimony* on the ground that he had not made all of the audit of the records. The motion was overruled and that ruling is assigned as error.

Craig's testimony shows that he was assisted in making the audit by his employee Gibson; that he was personally present about two weeks of the time the work was in progress, and that it was all done under his direction and in substance that he had familiarized himself with the records and the results shown by the audit and knew the audit to be correct. We think he was competent to testify to the result of the examination. Moreover, defendant's

motion was too broad. It struck at all of the witness's testimony, the major part of which was based upon records which he had personally examined and checked, a considerable part of that work having been done in defendant's presence, and it included also the testimony as to his conversation with defendant. On no theory could the motion to strike from the record all of Craig's testimony have been rightly sustained.

It was properly overruled for another reason. The fact that Craig had not been present during all of the time was brought out on his first cross-examination. When that fact developed no motion to strike out his testimony was made nor was objection offered to his further testimony on the ground now urged. On the contrary, defendant continued to cross-examine at length and in detail concerning the facts appearing from the audit. Later the witness was re-examined by the State and re-cross-examined by defendant several times, at one time being excused by defendant to get from the records some information which he could not at the moment give from memory, and being then recalled for further cross-examination. After all this lengthy examination and re-examination by both sides, defendant, at the close of witness's testimony, in his motion to strike out for the first time objected to witness's competency. By thus failing to make timely objection when he learned of the alleged incompetency, we think he should be held to have waived the right to urge it. A party cannot permit evidence to be given without objection, knowing the ground on which objection might be made, and then, if it is unsatisfactory, have it stricken out. [State v. Lehman, 175 Mo. 619, 625, 75 S. W. 139.]

VI. In his opening statement to the jury the prosecuting attorney stated that the evidence would show that after defendant was indicted ''a reward was offered for him,'' whereupon defendant objected and moved ''that the jury be discharged because of such improper statement.'' The court overruled the motion for discharge of the jury, but admonished the prosecutor to confine his statement to what he proposed to prove with reference to the specific charge in the indictment. Defendant's counsel claimed that the prosecuting attorney also said, following the reference to a reward, ''We are going to show that.'' The court stated that he did not hear that remark, but again charged the prosecuting attorney to confine his statement to the specific charge in the indictment. No request was made that the court instruct the jury to disregard the statement complained of.

Defendant excepted to the court's refusal to discharge the jury and he now urges such refusal as reversible error. His argument is that the reference to a reward implied that defendant had fled. Evidence of flight would have been competent. No such evidence was offered,

but absent some further showing than appears in the record we cannot say that the prosecutor acted in bad faith in making the statement. He may have had such evidence and refrained from offering it because of the admonition of the court in response to defendant's objection. "Trial courts must necessarily rely upon the good faith of counsel in making their opening statements to the jury, as to material facts and circumstances which they expect to prove." [Dees v. Skrainka Constr. Co. (Mo.), 8 S. W. (2d) 873, 878.] It is apparent from the record that throughout the trial the learned trial court endeavored properly to guard the defendant's legal rights. He evidently did not think that the prosecutor acted in bad faith in making the statement or that it prejudicially affected defendant's rights, nor are we so impressed.

We have examined the cases cited by appellant in support of his contention, but they are based on different facts and we do not consider them applicable. We think there was no error in overruling the motion to discharge the jury. [See State v. Beaghler (Mo.), 18 S. W. (2d) 423, 427 and cases cited; State v. Smith (Mo.), 281 S. W. 35, 40; Dees v. Skrainka Constr. Co., supra.]

VII. Defendant objected to the State's main instruction on the ground, among others, that it authorized conviction if the jury found the offense to have been committed within five years prior to the finding of the indictment. He asserts that the period of limitation is three years, relying upon State v. Martin, supra.

In State v. Douglass, 239 Mo. 674, 144 S. W. 407, in a prosecution under the same statute (Sec. 4556, R. S. 1909; Sec. 3334, R. S. 1919), the question was squarely at issue, and we held that the five-year period of limitation prescribed by Section 4945, Revised Statutes 1909, now Section 3737, Revised Statutes 1919, applied.

In State v. Martin, supra, decided in 1918, the limitation period is stated to be three years. The question was again involved in State v. Howell, 317 Mo. 330, 296 S. W. 370, decided in 1927, wherein the appellant challenged the constitutionality of Section 3334, Revised Statutes 1919, as affected by the Statute of Limitations, Section 3737, Revised Statutes 1919. The opinion in the Howell case was written by the same learned judge who, as commissioner, wrote the Martin case, and it clearly recognizes Section 3737, Revised Statutes 1919, as the applicable statute of limitation and approves the reasoning and the holding in State v. Douglass, supra. It is clear that in the Martin case the court inadvertently overlooked the applicable statute and the decision in the Douglass case. We approve the Douglass and Howell cases and overrule State v. Martin, supra, on that point.

There are some other allegations of error in the motion for new trial which are not here assigned by appellant as error nor referred

to in his points and authorities, brief or argument, and apparently have been abandoned, hence we refrain from discussing them. We see no reversible error in them. Appellant appears to have had a fair trial and we find no reversible error in the record.

The judgment of the circuit court is affirmed. *Davis* and *Westhues*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All of the judges concur.